Colcock, J.
As to the first ground in this case, I think it was perfectly correct to admit parol evidence to do away the effect, which, it was contended, should be. produced by the advertisement. For I will suppose that it could have been proved that the negro in question was not included in the advertisement; that the vendue-master had not the possession of her until the sale, and that she did not belong to the same person who owned those alluded to in the advertisement. It would certainly have been unjust to attach, in this way, an express warranty to property which it was never the intention of the vendor to warrant.
As to the second ground, after the most deliberate consideration of the case, I see nothing which distinguishes it from a number of cases decided on the same principles in our courts, and particularly the case of Timrod v. Shoolbred, 1 Bay, 324, in which it was decided, that when the seeds of the disorder were proved to have existed at the time of the sale, and the negro afterwards died of that disorder, the vendor should be liable.
But it was contended, that the negro had the appearance of unhealthiness at the time of the sale, and that where defects are visible, the law will not relieve. Of this I am fully aware, but by an examination of the cases decided on this ground, it will be found’. *233 that such defects are meant as are obvious to a common observer. Now I presume there is no criterion more fallacious than the appearance of people of this description, and that it requires a great degree of skill to judge by the face of a person whether he is laboring under disease, and particularly whether under a disease of an incurable nature. The cases where the purchaser is required to see for himself, are such as where a horse has lost an eye, or eyes, a defect visible .and obvious, and which cannot be said to bear any analogy to the defect in this case. In the case of Timrod v. Shoolbred, before mentioned, the language of the court is, that “ this warranty,” the implied warranty arising from a sound price, “ extends to all faults, known and unknown to the seller ; and although, in general, it principally relates to title and qualification, and not to longevity, yet, in some cases, it ought lo be construed to extend to the latter. For if the negro sold had about him, at the time of sale, the seed of a disorder generally difficult of cure, and which occasioned his death, it would be unreasonable to say that the purchaser shall sustain the loss.” In this case it was proved that the negro was affected by the disorder of which she died, at the time of the sale.
I have said thus much on the ground of implied warranty, because, it was contended, that although she was advertised as “ prime,” that expression, by general consent, in this country, did not carry any warranty as to soundness. But this is beyond my powers of comprehension, for the word must apply to qualification alone ; and I am inclined to think, if the vendue-master had expressly said he offered a prime wench, but very sickly, for sale, he would have had very few bidders. ^ 1 conceive that there was an express warranty, and, in such cases, the law is clear, that the purchaser need not use any uncommon diligence to ascertain whether the warranty is correct. I am, therefore, of opinion a new trial should be granted.
Bkevaiid, J.
In this case my opinion is, that the motion ought to be rejected; and fot* the reasons following : The advertisement of the defendant, that at such a place, on such a day, he would expose for sale, a number of prime negro slaves, I consider in the light of a notice to persons wishing to purchase slaves, in order to attract bidders, and not as intending to hold out the terms or conditions of the proposed sale. I cannot believe the defendant intended, by his advertisement, to warrant the soundness of every slave, to be sold on the day, and at the place mentioned ; and that every such slave should answer the description given in the'adver *234 tisement of the whole gang, collectively; I cannot believe the advertisement was so understood by any purchaser at the sale. It is 1104 reasonable to suppose the defendant meant, by his advertisement to preclude himself from selling any but such slaves as should answer the description- of prime slaves, upon such terms and conditions as he might fairly propose and agree to, verbally or otherwise, at the time of sale; or that every purchaser at the sale, could under, stand the advertisement in any other light than that of a mere notice, that prime slaves would be offered for sale upon such terms and conditions as should be declared.at the time and place of sale. A slave in every respect prime, at the time of advertising, might become unsound, or materially .defective, before the day of sale ; yet can it be seriously pretended, that the defendant was estopped by his advertisement, from selling him, at the time and place proposed, upon such' terms as might be fairly declared at the time of selling 1 The case of Gunnis and others v. Erhart, 1 H. Black. Rep. 280, is very different from the present. In..that' case, the printed conditions of the sale stated, that the copyhold estate offered for sale was free from all incumbrances. This was a false representation, made at the time of the sale, and the purchaser at the sale relied upon it, and was deceived. Parol evidence was indeed offered, to prove that the auctioneer had publicly declared, when the estate was put up, that it was charged with the incumbrance to which it was subject, which the court refused to. admit; but it was refused on the ground, that verbal declarations at an auction, contrary to the printed conditions of sale, could not be admitted, without opening a door to fraud ; and there was no evidence that the purchaser had particular personal information of the inheritance in question.
In the present case, the testimony of two or three witnesses yas given in evidence, to prove that it was expressly declared at the sale, that the buyer was to run the risk 6f unsoundness,, and of every defect, save that of title, and that the appearance of the slave in question, indicated unsoundness. This evidence was objected to, upon the authority or reason of the case of G,unnis. v. Erhart, which I have already noticed, and which appears to me very distinguishable from this case. I am of opinion, .that' in cases like the. present, the advertisement of sale is never intended to state the conditions of sale ; but that the conditions are to be made known at the time of sale, unless otherwise plainly and clearly .expressed ; and that it is not necessary to prove particular and personal notice *235 to the purchaser, of the conditions declared at the sale; it is al*ways to be presumed that he has had notice.
In the view I have taken of this case, with all its circumstances, it appears to me that the evidence given at the trial was properly admitted, and was fairly left to the jury: and I do not feel autho. sized, from the impressions made on my mind by the evidence stated and commented on, to say that the verdict is not supported by suf. ficient evidence.
Grimke, J.
A new trial is moved for in this case, because pa-rol evidence was admitted .by the judge, to contradict an advertisement, in which the negroes to be sold were described to be prime; but the defendant proved, that when the wench was put up for sale, she appeared emaciated, that it was visible to the eye of every one, that she was diseased, and that, therefore, unless there was án express warranty of soundness, notwithstanding, and in contradiction to the sickly appearance of the wench, plaintiff could not recover. He also proved, that at the sale, it was declared, that nothing but the title would be warranted; but he did not bring home to the plaintiff, the hearing of this declaration.
The plaintiff now alleges, that such evidence ought not to have been received; and quotes a case from 1 H. Black. 289, where ah advertisement declared that a certain tenement, which was for sale, was free from incumbrance. But although it did appear, that the plaintiffs could have proved that a counter declaration to the advertisement was made at the time of sale, ás in this case, yet there was no' proof that the' declaration had come to the ears of the purchaser,' cif that he could have been, by any thing which happened at the sale, put on his guard, or been informed of the circumstance. This case, then, does not tally with the one before us ; for here, the very sight of the wench was sufficiently indicativé of a Very bad slate of health ; and the law lays it down, that there is a class of cases Where, although a man is deceived, he can maintain no action : as where the affirmation is, that the thing sold has not a defect, which is a visible one, there the imposition, the fraudulent intent is' admitted, but it is no tort. 3 D. and E. 54. We are, therefore, of opinion that no new trial should be granted.
The other judges concurred.